# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| LYDIA ALPHABET, | : | Case No. 1:05 CV 1792 |
| | : | |
| Plaintiff, | : | JUDGE KATHLEEN O'MALLEY |
| | : | |
| v. | : | |
| | : | OPINION AND ORDER |
| CITY OF CLEVELAND, *et al.*, | : | |
| | : | |
| Defendants. | : | |

This matter arises on a Motion for Summary Judgment ("Motion") filed by the City of Cleveland ("City")(Doc. 30), in which the City seeks dismissal of all claims against it. Plaintiff Lydia Alphabet ("Plaintiff") filed an opposition (Doc. 37), and the City replied (Doc. 42). The Court then referred this matter to Magistrate Judge Kenneth S. McHargh for preparation of a Report and Recommendation ("R&R"), which was issued on September 5, 2006 (Doc. 44).

In a thorough and thoughtful order, the Magistrate Judge recommended that the City's Motion be granted, and that Plaintiff's claims against the City under 42 U.S.C. § 1983 be dismissed. Thereafter, Plaintiff filed written objections to the R&R (Doc. 46), and the City responded (Doc. 47).

For the reasons outlined below, the Court **ADOPTS** the R&R as its own. Accordingly, the City's Motion for Summary Judgment (Doc. 30) is **GRANTED** and Plaintiff's case is **DISMISSED with prejudice**.[1] In light of Plaintiff's objections, however, the Court finds it necessary to briefly articulate its conclusion.

---

[1]     The remaining named defendants are "John Doe 1-5 City of Cleveland Police Officers." Plaintiff's request to add Eugene Smith, a retired City of Cleveland Police Officer, as a defendant, or - alternatively - to substitute him for a John Doe defendant, was previously denied without objection (Doc. 43). Because an action cannot proceed solely against John Doe defendants, it is appropriate to dismiss this case in its entirety.

## I.    BACKGROUND

Plaintiff alleges she was detained for an unconstitutionally long period of time when she was imprisoned for a period of four days without any criminal charges being filed against her. Plaintiff was arrested for burglary of a residence on the evening of September 18, 2003.  The next morning, on September 19, 2003, the homeowner came to the station to advise the police that Plaintiff had the homeowner's permission to be on the premises, and that Plaintiff was authorized to remove the items alleged to have been stolen.  Despite this knowledge, and despite releasing the property to the homeowner that morning, the City did not release Plaintiff until three days after the homeowner had informed the police of their mistake.

Plaintiff does not claim that her initial arrest and detention were constitutionally improper - *i.e.*, without probable cause.  Thus, Plaintiff does not challenge the fact of her detention; she challenges only the duration of her detention.  Plaintiff contends the City's policy with respect to the charging and releasing of warrantless felony suspects - General Police Order 4.1.06 - is the problem, and that this problem caused Plaintiff's unreasonably lengthy detention.[2]  The City disputes this contention, asserting that faulty police work - in disregard of written policies and procedures

---

[2]      General Police Order 4.1.06 requires that felony suspects arrested without a warrant are to be timely charged or released.  Detectives are instructed to "make every effort to complete investigations within 24 hours."  GPO 4.1.06(II)(A).  If more than 24 hours are needed to investigate a felony suspect arrested without a warrant, the detectives are required to submit to the Officer in Charge of the district a written request for permission to detain the suspect for an additional 24 hours.  GPO 4.1.06(II)(B).  The request must: (1) specify reasonable cause for the continued detention; (2) outline steps taken to conduct the investigation and include a "plan of investigating action" for the additional 24 hours; and, (3) document all efforts made to charge the suspect.  Finally, General Police Order 4.1.06(II)(C) forbids pre-charge detentions beyond 48 hours absent "emergency or extraordinary circumstances" and then "only with the written approval of a command officer."

specifically designed to protect its citizens against unlawful detentions - is the real problem here, and that the officers who violated General Police Order 4.1.06 have since been disciplined.

Plaintiff does not argue that General Police Order 4.1.06 is unconstitutional as written. Indeed, Plaintiff has conceded that the policy is facially constitutional.  She contends, however, that the policy is *inadequate* in that it does not have sufficient safeguards to prevent the alleged constitutional violation that occurred here.  Essentially, Plaintiff is litigating her § 1983 claims on a theory that the City has maintained an official "policy of inaction" by failing to take additional steps to prevent unlawful detentions.

In response, the City has denied that it has any custom or policy which allows individuals to remain in jail without being charged with a crime.  Like Plaintiff, the City points to General Police Order 4.1.06 - but for the opposite proposition.  The City contends that, rather than having no policy or having a policy that encourages lengthy detentions, it has a facially valid and constitutional policy that specifically *prohibits* lengthy detentions of warrantless felony suspects.  Because Plaintiff has not shown that a constitutional right was violated by <u>compliance</u> with City policy (as distinct from direct violations thereof), the City argues that Plaintiff has failed to present evidence that a City policy was the "moving force" behind the alleged constitutional injury.  The City concludes, therefore, that Plaintiff's injury is the result of a *failure to follow* the City's procedures, rather than a defective procedure.

## II.    THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

The R&R accurately sets forth a comprehensive discussion of the facts in this case; therefore, the Court adopts that portion of the R&R in its entirety.  Ultimately, the Magistrate Judge agreed with the City's position that - based on the undisputed facts - Plaintiff would be unable to establish

3

the elements necessary to impose municipal liability on the City under 42 U.S.C. § 1983.

To impose § 1983 liability on a municipality for the deprivation of a right protected by the Constitution, a plaintiff must establish that the injury was caused by an unconstitutional "policy" or "custom" of the municipality. *Stemler v. City of Florence*, 126 F.3d 856, 865 (6th Cir. 1997). A municipality cannot be held liable under § 1983 for an injury inflicted only by its employees or agents. *Monell v. Dept. of Social Serv.*, 436 U.S. 658, 694 (1978). Specifically, a municipality cannot be held liable ***solely*** because it employs a tortfeasor - or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory. *Id.* at 691 (emphasis in original). For liability to attach, there must be:

> [E]xecution of a government's policy or custom which results in an unconstitutional tort. Such a requirement ensures that a county is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the county.

*Gregory v. Shelby County*, 220 F.3d 433, 441 (6th Cir. 2000)(citing *Monell*, *supra*). The policy or custom need not necessarily be a formal, written policy:

> [A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law.

*Id.* at 441-42 (citing *Board of County Comm'rs v. Brown* (1997), 520 U.S. 397; *see also, Doe v. Claiborne County,* 103 F.3d 495, 507-08 (6th Cir. 1996)(A "custom" for purposes of *Monell* liability must "be so permanent and well settled as to constitute a custom or usage with the force of law" ... In turn, the notion of "law" must include "[d]eeply embedded traditional ways of carrying out state policy" ... It must reflect a course of action deliberately chosen from among various alternatives ...

4

In short, a "custom" is a "legal institution" not memorialized by written law.).

An alleged unwritten "custom" or "policy" of inaction, however, must amount to a "deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).  This occurs when the need for more or different action:

> [I]s so obvious, and the inadequacy [of the current procedure] so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.

*Id.* at 390.  Deliberate indifference, however, "does not mean a collection of sloppy, or even reckless, oversights; it means evidence showing an obvious, deliberate indifference" to the alleged violation. *Doe*, 103 F.3d at 508.  It is "a stringent standard of fault," and "simple or even heightened negligence will not suffice." *Board of County Comm'rs v. Brown*, 117 S.Ct. 1382, 1391 (1997); *Stemler*, 126 F.3d at 865.

In addition to showing an unconstitutional "custom" or "policy," Plaintiff is also required to demonstrate causation.  The existence of a policy or custom of inaction, without more, is insufficient to impose § 1983 liability. *City of Canton*, 489 U.S. at 388-89.  A municipality can be liable under § 1983 only where its policies are the "moving force [behind] the constitutional violation." *Id.* at 389.  This requirement has been found necessary to prevent the type of *de facto respondeat superior* liability that is expressly prohibited by *Monell*. *Doe*, 03 F.3d at 508.

Because the Magistrate Judge determined from Plaintiff's arguments that she was attempting to impose liability on the City for an alleged "custom of inaction," the Magistrate Judge identified the following elements Plaintiff must prove:

> 1.  The existence of a clear and persistent pattern of illegal activity;
> 2.  Which the City knew or should have known about;

       3.      Yet remained deliberately indifferent to; and,

       4.      That the City's custom was the cause of the constitutional violation.

R&R, p. 7-8.

The Magistrate Judge then applied each of these elements to the facts in the record, and ultimately found that Plaintiff's primary evidence of six other complaints filed against the City for allegedly unconstitutionally long detentions - over the course of five years - did not establish a "clear and persistent pattern of similar unconstitutional conduct," nor did it establish a practice "so permanent and widespread as to have the force of law" as Plaintiff contended.[3]  Rather, the Magistrate Judge found that this evidence of a relatively small number of complaints against a City which arrests dozens, if not hundreds, of people weekly, showed - at best - that certain employees appear to have failed to follow proper procedure in limited instances.  R&R, p. 11-12.[4]

The Magistrate Judge cited to cases, both within and outside the Sixth Circuit, where other plaintiffs likewise attempted to establish a pattern of unconstitutional conduct through evidence of other instances of unconstitutional conduct.  The cases ranged from that involving only one other - but severe - instance of unconstitutional conduct, to one involving eleven other instances of

---

   [3]      Plaintiff's only other evidence of a widespread pattern or "custom of inaction" consisted of the deposition testimony of a retired City of Cleveland police officer who testified that, although he could not specifically remember, he "probably" received more than ten phone calls over a period of twelve years from the Cleveland Police Department's Bureau of Investigation regarding "persons being left on the arrest sheet, meaning that the person needed to be released or that the timely release date was quickly becoming due."

   [4]      The Magistrate Judge did not make a determination as to the actual merits of the six complaints filed against the City, nor was an opinion rendered as to the relevancy or admissibility of this evidence.  For the sake of efficiency and a thorough analysis of the "clear and persistent pattern" element, however, the Magistrate Judge granted Plaintiff an assumption that these other complaints were relevant and that they constituted complaints of unconstitutional conduct.

unconstitutional conduct.  Nevertheless, when applied against the overall number of individuals handled, each plaintiff was found not to have established a "clear and persistent pattern" of unconstitutional conduct, or a "well-established and widespread" practice or policy of inaction.  The Magistrate Judge found the same inadequacies here.

Plaintiff also attempted to use these six complaints as proof that the City was on notice of, but deliberately indifferent to, the potential that a constitutional violation like that at issue here might occur.[5]  The Magistrate Judge again found that this evidence was insufficient to show such "constructive notice" to the City.

While the Magistrate Judge conceded that a sheer numerosity of incidents <u>can</u> provide evidence of constructive knowledge in certain instances, and that the prior incidences need not be substantially similar to have probative value, the Magistrate Judge pointed out that two of the six complaints were filed ***after*** Plaintiff's arrest.  Only four complaints, therefore, were found to be relevant to the issue of notice.  The Magistrate Judge concluded that four complaints of unconstitutional conduct by *different* officers over the span of four years could not be deemed to be a "numerosity of incidents" or a "widespread extent of practices" that would render the risk of

---

[5]     Although the Magistrate Judge could have ended the inquiry upon a finding that Plaintiff did not present sufficient evidence to establish the existence of a policy or custom, the Magistrate Judge applied the facts to the remaining elements of proof - including notice and deliberate indifference.  As *Doe* points out, however, the Magistrate Judge was not <u>required</u> to express a view on whether or not, had Plaintiff established a custom or policy of inaction, the inaction amounted to deliberate indifference.  This is so because "[t]here is an analytical distinction between being deliberately indifferent as to one particular incident, and having a "policy" of always being deliberately indifferent to unconstitutional action." *Doe*, 103 F.3d at 508.  The Magistrate Judge correctly noted that - while Plaintiff was proceeding differently - there is a difference between proof of a *pattern* of unconstitutional conduct sufficient to constitute a policy, and proof of *constructive knowledge* of such a policy.

similar harm so obvious that the City should have known of it.  R&R, p. 16.

Because, however, the Magistrate Judge found that Plaintiff was also attempting to argue that the inadequacies of General Police Order 4.1.06 were so clearly obvious to the City as to dispense with the notice element, the Magistrate Judge applied a "foreseeable consequences" exception in analyzing General Police Order 4.1.06.  Under this exception, a plaintiff need not present evidence of other complaints if the plaintiff can show that the municipality's inaction had the "obvious consequence" of leading to a constitutional violation of the sort experienced by the plaintiff. *Gregory v. City of Louisville*, 444 F.3d 725, 755 (6th Cir. 2006).  The constitutional violation must be such a "known and obvious" or "highly predictable consequence" of an ongoing course of action (or inaction) that knowledge of past violations is unnecessary and deliberate indifference will be assumed.  *Miller v. Calhoun County*, 408 F.3d 803, 816-17 (6th Cir. 2005).

Applying this exception to the record in this case, the Magistrate Judge concluded the evidence simply did not allow for a reasonable inference that Plaintiff's September 2003 detention was a "highly predictable consequence" of any allegedly obvious inadequacies of General Police Order 4.1.06.  R&R, p. 18.  Plaintiff asserts that General Police Order 4.1.06 is inadequate in the following respects:

> (1) The policy does not clarify who is responsible for detainees;
>
> (2) The policy does not explain what happens if a detective assigned to a case gets sick and cannot complete the assignment;
>
> (3) The policy is silent as to who has final responsibility where more than one detective works on a case;
>
> (4) There is no policy or procedure in place as to any follow up or "back up" whatsoever to make sure suspects are timely

released;

(5)    There is no procedure as to who has the responsibility to make sure the suspect is released once it is identified that the suspect has been detained too long; and,

(6)    There is no job training for the "office man" who is responsible for looking at the arrest logbook every day to determine if the time to release a suspect is near, or if they are past the time to release the suspect.

In determining that Plaintiff's lengthy detention was not a "highly predictable consequence" of the alleged inadequacies of General Police Order 4.1.06, however, the Magistrate Judge pointed to the following provisions:

4.1.06(I)(E)    Detectives shall complete the final disposition of any prisoner assigned to them ...

4.1.06(II)(E)(1)-(4)  The detective assigned to the case shall:

1.    Report to the BSI General Office and complete a Final Disposition Receipt ... to release the prisoner.
2.    Inform the Central Prison Unit (CPU) of the release and ascertain the location of the prisoner ...
3.    Place the Final Disposition Receipt in the Final Disposition Receipt basket.
4.    Make the disposition entry in the logbook.

4.1.06(II)(B)    Requires every detective seeking to hold a suspect for longer than 24 hours to submit a written request to their supervisor, or the Officer in Charge, for approval.

4.1.06(I)(G)    Requires the unit Officer in Charge to "periodically review the logbook to determine the status of each suspect released to ensure that the investigations are

timely completed."[6]

These provisions, coupled with additional evidentiary materials in the record, caused the Magistrate Judge to reject Plaintiff's arguments that General Police Order 4.1.06 lacks clear job responsibilities, lacks a clear indication as to who has final responsibility for ensuring the timely release of detainees, and lacks adequate follow-up procedures. The Magistrate Judge's review of the record evidence led him to conclude that it was more than clear that the individual responsible for the release of a suspect/detainee is the detective assigned to the case. Testimony from the City's officers and detectives further indicated to the Magistrate Judge that the City's own employees believed the detective assigned to a case is the person with responsibility for the release of a suspect/detainee, and that the Officer in Charge of the Detective Bureau is ultimately responsible for ensuring that timely release has been accomplished.

Finally, as to the "deliberate indifference" and "causation" elements, the Magistrate Judge first surmised that *if* Plaintiff were able to establish a genuine issue of material fact regarding the pattern and notice elements - which Plaintiff had not - it would appear that a genuine issue of material fact would also exist regarding the deliberate indifference factor. This was based upon the Magistrate Judge's finding that, of the six prior complaints produced by Plaintiff as evidence of past unconstitutional conduct, the record showed that in only two instances was discipline recommended for an officer who detained a suspect for an unlawful period: one of those instances involved a recommendation for counseling, while the other involved a three-day suspension. And there was no evidence to indicate that any of the recommended discipline was actually imposed. Similarly, the

---

[6]    The Magistrate Judge also noted that General Police Order 9.1.03 - not challenged in this case - charges the Officer in Charge of a district station with the duty of ensuring compliance with all Division policies and procedures for prisoners.

10

Magistrate Judge found that *if* the record had created a genuine factual dispute with respect to the

first three elements of § 1983 municipal liability - which he found it did not - the issue of whether

the injury would "have been avoided had the officer worked under a policy that was not deficient in

the identified respect" would be one for the jury.  R&R, p. 25 (citing *City of Canton*, 489 U.S. at

391.).[7]

The Magistrate Judge ultimately concluded, however, that Plaintiff had failed to show that

***the municipality itself*** caused the alleged constitutional violation, as required to impose § 1983

liability on the City.  In essence, the Magistrate Judge found there was insufficient evidence to

establish that "action pursuant to official municipal policy of some nature caused a constitutional

tort," or that Plaintiff's injury resulted from a decision of the City's "duly constituted legislative body

or of those officials whose acts may fairly be said to be those of the City," as required under the

reasoning of *City of Canton v. Harris*, 489 U.S. 378 (1989) and *Monell v. Dept. of Social Serv.*, 436

U.S. 658 (1978).

While the Magistrate Judge noted that the City did not deny that Plaintiff was deprived of

a constitutional right, and that her lengthy detention should not have happened, he found that there

simply was insufficient evidence to establish that any alleged inaction by the City was the *moving*

---

[7]     The Magistrate Judge also noted that Plaintiff attempted to establish § 1983
liability by arguing that the City failed to train adequately the "office man"
regarding the timely release of suspects.  Plaintiff contradicted herself, however,
by specifically stating in her Opposition to Motion for Summary Judgment that
the burden of ensuring that suspects/detainees were timely released was not the
"office man's" responsibility, and that he was not responsible for any follow-up
on a case.  The Magistrate Judge found that General Police Order 4.1.06
confirmed this, by placing responsibility for the release of suspects/detainees upon
the detective assigned to the case - a fact which was recognized by the "office
man" during his deposition.

*force* behind the deprivation of Plaintiff's constitutional rights. Rather, the Magistrate Judge concluded that the moving force behind Plaintiff's unfortunate injury was sloppy oversight on the part of non-policymaking employees of the City.

Based upon its own *de novo* review of the record, the Court reaches the same conclusions as the Magistrate Judge.

## III.    DISCUSSION

The City seeks summary judgment on Plaintiff's claims under 42 U.S.C. § 1983 pursuant to Federal Rule of Civil Procedure 56.[8] That rule provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law . . . .

Rule 56(e) specifies the materials properly submitted in connection with a motion for summary judgment:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the  matters stated therein . . . .  The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denial of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

---

[8]      Plaintiff concedes that her state law claims against the City, based upon vicarious liability, fail as a matter of law.

The movant, however, is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *see also White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943-44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby* (D.C. Cir. 1988), 863 F.2d 1029, 1034).

The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The lack of such a response by the nonmoving party may result

13

in an automatic grant of summary judgement.  *See Reeves v. Fox Television Network*, 983 F.Supp. 703, 709 (N.D. Ohio 1997).  The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts.  *Fulson*, 801 F. Supp. 1 at 4.

### B.    Plaintiff's Objections To The R&R

Plaintiff's "Objections" to the Magistrate Judge's Report and Recommendation are ***word-for-word reiterations*** of the exact same arguments Plaintiff raised in her original Memorandum in Opposition to the City's motion for summary judgment.  Indeed, pages 3 through 20 of Plaintiff's Objections to The Magistrate Judge's Report (Doc. 46) are **exactly identical** to pages 2 through 19 of Plaintiff's Opposition to Summary Judgment (Doc. 37).  The only exception is the insertion in Plaintiff's Objections, in approximately three places, of either a statement that the Magistrate Judge failed to give proper credence to Plaintiff's argument, and/or a summary of the same facts briefed - time and again - in the Opposition to Summary Judgment, but this time with additional emphasis (i.e., bold typeface).

Plaintiff fails to point to any specific determinations made by the Magistrate Judge that Plaintiff believes were either legally incorrect or against the weight of the evidence, and fails to point to any authority to support her general position that the Magistrate Judge "got it wrong."  Instead, Plaintiff has simply re-filed her original Memorandum in Opposition to Summary Judgment as her "Objections," and attempts to use her Memorandum as proof that the Magistrate Judge's recommendation should be ignored and the City's Motion for Summary Judgment should be denied.

The Court finds that Plaintiff's failure to identify **specific objections** to the Magistrate Judge's recommendation amounts to no objection at all.  The Magistrate Judge fully addressed each

14

and every element Plaintiff must prove, applied those elements to the record evidence, *and* granted

Plaintiff the benefit of multiple assumptions before determining that Plaintiff had failed to meet her

burden of proof.  In doing so, the Magistrate Judge addressed <u>every</u> point now designated as an

objection to his R&R.

Because the Court reaches the same conclusions as the Magistrate Judge after a *de novo*

determination of those portions of the report or specified proposed findings or recommendations to

which objection is purportedly made, no further articulation of the Court's reasoning is required.

*Tuggle v. Seabold*, 806 F.2d 87, 92-93 (6th Cir. 1986).

## IV.    CONCLUSION

There is no doubt that Plaintiff suffered because she was jailed far longer than necessary. There is also no doubt that Plaintiff's undue detention need not, and should not, have happened. And, there is no doubt that Plaintiff has a right to complain about her treatment by City employees. The fact remains, however, that Plaintiff cannot sustain a federal civil claim against the City for the harm she suffered.[9]

For the foregoing reasons, as well as those outlined in the Magistrate Judge's Report and Recommendation, which the Court has adopted as its own, the City's Motion for Summary Judgment (Doc. 30) is **GRANTED** and Plaintiff's case is **DISMISSED with prejudice**.

**IT IS SO ORDERED.**

> **s/Kathleen M. O'Malley**
> **KATHLEEN McDONALD O'MALLEY**
> **UNITED STATES DISTRICT JUDGE**

**Dated: November 7, 2006**

---

[9]    While perhaps not adequate in Plaintiff's view, it is meaningful that discipline was imposed on those individual City employees whose mistakes caused Plaintiff's undue detention.